## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BURAK S. KOTAN | : | |
| | : | |
| MB GROUP, INC. | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:05CV0119-JDB |
| | : | |
| v. | : | |
| | : | |
| PIZZA OUTLET, INC. | : | |
| | : | |
| VOCELLI PIZZA, L.P. | : | |
| | : | |
| RANDY FOX | : | |
| | : | |
| UMIT YIGIT, D.D.S. | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATION OF ROBERT MONTANARI IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

I, Robert Montanari, of full age, hereby deposes and states:

1.    I am the Director of Franchise Sales for Defendant Vocelli Pizza, L.P. ("Vocelli"). I have personal knowledge of the matters contained in this Certification, and if called upon to do so I would testify at trial consistently with this Certification.

2.    Vocelli is a Pennsylvania limited partnership with its principal place of business at 2101 Greentree Road, Suite A 202, Pittsburgh, PA 15220 and is the national franchisor of Vocelli Pizza franchise restaurants.

3.    Defendant Pizza Outlet, Inc. ("Pizza Outlet") is a Pennsylvania Corporation and the general partner of Vocelli Pizza.

4.    I am familiar with the business records of Vocelli. Those business records are made at or near the times indicated, by, or from information transmitted by, persons with

knowledge. These records are kept in the course of Vocelli's regularly conducted business activities, and it is the regular practice of Vocelli to keep such records. These records are kept under my supervision and control at Vocelli's Pittsburgh office.

5.    Currently, there are approximately 77 franchisee operated Vocelli Pizza restaurants operating in 7 states, as well as 31 company operated Vocelli Pizza restaurants in 4 states.

6.    Vocelli Pizza franchise restaurants were originally offered under the mark Pizza Outlet, but as of February 25, 2002, restaurants located in Northern Virginia began operating under the name Vocelli Pizza. This name change coincided with the adoption of a more upscale and gourmet menu. All restaurants, system wide, began operating as Vocelli Pizza effective September 8, 2003.

7.    On or about February 20, 2004, Vocelli and Pizza Outlet, Inc. and plaintiff Burak Kotan ("Kotan") and Mert Onur ("Onur") entered into a Vocelli Pizza development agreement (the "Development Agreement") pursuant to which Kotan and Onur obtained the right and undertook the obligation to promote and enhance the development of Vocelli Pizza restaurants in the western portion of Washington, D.C. A true and correct copy of the Development Agreement is attached as Exhibit "A".

8.    The Development Agreement contained a minimum development schedule requiring Kotan and Onur to have six Vocelli Pizza restaurants open and operating by June 1, 2007, with the first required to be open on or before December 1, 2004.

9.    Section 10(B)(1) of the Development Agreement provided that Kotan and Onur's failure to open and operate Vocelli Pizza restaurants in accordance with the development schedule would constitute a default of the Development Agreement, to which Vocelli/Pizza Outlet could terminate the Development Agreement without any opportunity to cure.

10.    Under Section 5 of the development Agreement, Kotan and Onur agreed to pay Vocelli Pizza/Pizza Outlet a $15,000 nonrefundable development fee for the development of the first restaurant, and a subsequent $3,000 per each additional restaurant opened.

11.    Section 19(D) contains a jurisdiction clause stating in part that "any action arising out of or relating to this Agreement (including, without limitation, the offer and sale of this Agreement) and the relationship of the parties shall be instituted and maintained only in a state or federal court of general jurisdiction in Allegheny County, Pennsylvania...."

12.    By an email dated September 27, 2004, Kotan notified Vocelli Pizza that he would be unable to meet the December 1, 2004 deadline for opening the first Vocelli Pizza restaurant. I certify that a true and correct copy of the September 27, 2004 email is attached to the complaint as Exhibit "B".

13.    By letter dated September 30, 2004, Vocelli granted Kotan an extension until June 1, 2005 to open the first Vocelli restaurant required under the Development Agreement. I certify that a true and correct copy of the September 30, 2004 letter is attached to the Complaint as Exhibit "C".

14.    As a result of the lack of progress being made in opening the first restaurant, I wrote to Kotan and Onur on April 21, 2005, informing them that as of June 2, 2005, all development rights under the Development Agreement would revert back to Vocelli. I certify that a true and correct copies of the April 21, 2004 letters to Kotan and Onur are attached to the Complaint as Exhibit "D".

15.    In a May 9, 2005 letter to Kotan's attorney, John Shoreman, I reiterated Vocelli's intention to terminate the Development Agreement as a result of Kotan and Onur's failure to

have two Vocelli restaurants opened by June 2, 2005. A true and correct copy of the May, 2005

letter is attached to the Compliant as Exhibit "E"

16.     On June 2, 2005, the development Agreement was terminated.

17.     All of Vocelli's and Pizza Outlet's witnesses reside in Western Pennsylvania.

I affirm under the penalty of perjury that the foregoing is true and correct.


Dated: June __20__, 2005                    Robert Montanari

**EXHIBIT "A"**



# DEVELOPMENT AGREEMENT

## BURAK S KOTAN
## MERT ONUR

kotan and onur - DC 6 stores DA.doc

# TABLES OF CONTENTS

**Section**                                                                                            **Page**

|     | Introduction | 1 |
|-----|--------------|---|
| 1. | Grant of Development Rights | 2 |
| 2. | Reservation of Development Rights | 2 |
| 3. | Rights in Development Area | 3 |
| 4. | Development Obligations | 3 |
| 5. | Development Fee | 4 |
| 6. | Franchise Agreements | 4 |
| 7. | Grant of Franchises | 5 |
| 8. | Prerequisite to Raising Equity Capital | 7 |
| 9. | Management of Business | 8 |
| 10. | Termination by PO | 8 |
| 11. | Effect of Termination And Expiration | 10 |
| 12. | Covenant Not to Compete | 10 |
| 13. | Assignment | 12 |
| 14. | Right of First Refusal | 14 |
| 15. | Waiver | 14 |
| 16. | Independent Contractors/Indemnification | 15 |
| 17. | Notices And Payments | 15 |
| 18. | Acknowledgments And Covenants | 16 |
| 19. | Miscellaneous | 17 |

Exhibits

| A | Development Area |
| B | Minimum Development Obligation |

# VOCELLI® Pizza DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (the "Agreement") is made and entered into this *2 8th* day of ____February____, 2004, by and between **PIZZA OUTLET, INC.**, a Pennsylvania corporation, with its principal office at 2101 Greentree Road, Suite A-202, Pittsburgh, Pennsylvania 15220 ("PO") and __Burak S Kotan and Mert Onur__ whose principal address is ___854 Quince Orchard Blvd. #101 Gaithersburg, MD 20878___ ("DEVELOPER").

## INTRODUCTION

PO, as the result of the expenditure of time, skill, effort and money, has developed and owns a distinctive system relating to the establishment and operation of retail outlets for the sale of pizza and other products (hereinafter "System").

The distinguishing characteristics of the System include, without limitation, certain exterior and interior design, decor, color scheme and furnishings; special recipes and menu items; uniform standards, specifications and procedures for operations; quality and uniformity of products and services offered; procedures for inventory and management control; training and assistance; and advertising and promotional programs; all of which may be changed, improved and further developed by PO from time-to-time.

PO identifies the System by means of certain trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the "PIZZA OUTLET®" and "VOCELLI™" Pizza name, logo and such other trade names, service marks and trademarks as are now designated (and may hereafter be designated by PO in writing) for use in connection with the System (hereinafter referred to as "Proprietary Marks").

PO continues to develop, use and control the use of such Proprietary Marks in order to identify for the public the source of services and products marketed thereunder and under the System, and to represent the System's high standards of quality, appearance and service.

DEVELOPER desires to enter into the business of operating PIZZA OUTLET® or VOCELLI™ Pizza stores ("STORES") under the System and wishes to obtain franchises from PO, as well as to receive the training and other assistance provided by PO, for that purpose.

1.    **GRANT OF DEVELOPMENT RIGHTS**

    **A.**    PO grants to Developer, subject to all the terms, conditions and provisions herein, the right to develop STORES in the area (the "Development Area") described in Exhibit "A" of this Agreement.

    **B.**    Subject to the provisions contained herein, this Agreement shall be for a term commencing on the date hereof and expiring on the date set forth in Exhibit "B" of this Agreement.

2.    **RESERVATION OF DEVELOPMENT RIGHTS**

    **A.**    PO retains the right to sell its products within the Development Area through dissimilar channels of distribution. For purposes of this Agreement, dissimilar channels of distribution shall include, without limitation, sales of product to supermarkets and other resellers.

    **B.**    PO expressly excludes from this grant the right to sell, by delivery or otherwise, products or services to or in major airports, amusement parks and professional sports facilities. DEVELOPER acknowledges and agrees that such facilities present special, valuable and unique opportunities for the sale of products and/or services, and that PO has expressly reserved the right to develop such opportunities on its own or by the sale of exclusive or nonexclusive franchises to third parties. DEVELOPER does not possess any right of first refusal or other right with regard to such facilities.

    **C.**    DEVELOPER acknowledges and agrees that such non-traditional locations such as college campuses, hospitals and government facilities, and during special events such as fairs, carnivals, sporting events, *etc.* present special, valuable and unique opportunities for the sale of products and/or services. PO hereby grants to DEVELOPER, the right of first refusal described below with regard to any franchise to develop a STORE or STORES at such non-traditional locations within the Development Area where PO may at some point determine that a STORE is to be developed.

        (1)    If PO shall desire to develop a STORE or STORES in any of the non-traditional locations within the Development Area described in Section 2.C above, it shall, at least ninety (90) days prior to granting such franchise, send written notice of such decision (the date on which such notice is sent is hereinafter referred to as the "Notice Date") to DEVELOPER and offer to franchise such STORE upon the terms and conditions of this Agreement. Such offer shall remain open to DEVELOPER until the expiration of the thirtieth (30th) day following the Notice Date (the "Purchase Option").

        (2)    Acceptance of the Purchase Option by DEVELOPER must be made by written notice to PO. Following such acceptance, DEVELOPER must enter into a Franchise Agreement (substantially in the form of the now current Franchise Agreement

attached as Exhibit "C") with PO for such non-traditional location prior to the expiration of the ninetieth (90th) day following the Notice Date.

      **D.**    If DEVELOPER shall fail to accept the Purchase Option or fail to enter into the Franchise Agreement by the deadlines set forth above, the Purchase Option shall immediately terminate and PO may develop the STORE itself or franchise the STORE to a third party.

## 3.    RIGHTS IN DEVELOPMENT AREA

      **A.**    Provided DEVELOPER: (i) is in full compliance with the terms and conditions contained in this Agreement, including, without limitation, the development obligations contained in Section 4, and (ii) is in full compliance with all obligations under Franchise Agreements previously or hereafter entered into with PO, then during the term, and subject to all other provisions of this Agreement:

      (1)    PO will grant to DEVELOPER franchises for the ownership and operation of STOREs located within the Development Area.

      (2)    PO will not operate (directly or through an affiliate), nor grant a franchise for the operation of STOREs to be located within the Development Area, except (i) such franchises as are granted to DEVELOPER pursuant to this Agreement; and (ii) pursuant to Section 2 above.

      **B.**    At the expiration of the term of this Agreement as set forth in Exhibit "B", the exclusive nature of the Development Area will terminate; however, if DEVELOPER has fulfilled its obligations under this Agreement and is in compliance with all other agreements with PO, DEVELOPER will be given a first right of refusal for the further development of STOREs in the former Development Area. Such right will be effective until such time as DEVELOPER first elects not to exercise such right at which time DEVELOPER will have no remaining development rights hereunder. The terms of such right of first refusal shall be identical to those set forth in Section 2.D above.

      **C.**    Additionally, each STORE opened pursuant to this Agreement or pursuant to a separate Franchise Agreement, will maintain the specific geographic area reserved for exclusive delivery (the "Protected Delivery Zone") as such term is defined in the Franchise Agreement.

## 4.    DEVELOPMENT OBLIGATIONS

      **A.**    DEVELOPER agrees during the term of this Agreement and any extensions thereof that he will at all times faithfully, honestly, and diligently perform his obligations hereunder and that he will continuously exert his best efforts to promote and enhance the development of STOREs within the Development Area.

**B.** Without limiting the foregoing obligation, DEVELOPER agrees to have open and in operation the cumulative number of STORES (the "Minimum Development Obligation") by the dates set forth in Exhibit "B" of this Agreement (the "Development Schedule").

**C.** If a STORE is permanently closed after having been opened, DEVELOPER will develop and open a substitute STORE within one (1) year from the date of its permanent closing.

## 5.    DEVELOPMENT FEE

Concurrent with the execution of this Agreement, DEVELOPER shall pay to PO a nonrefundable, fully earned Development Fee calculated as follows: (1) Fifteen Thousand Dollars ($15,000) for the first STORE; and (2) Three Thousand Dollars ($3,000) for each additional STORE to be opened according to the Development Schedule ("Development Fee"). The Development Fee shall be applied to the initial franchise fees payable under each franchise agreement executed pursuant to this Agreement. The Development Fee is in consideration for this Agreement and not in consideration for any franchise agreement and is nonrefundable notwithstanding any provision to the contrary contained in any franchise agreement. The balance of the initial franchise fees payable pursuant to each franchise agreement executed pursuant to this Agreement shall be due as specified in Section 6.

## 6.    FRANCHISE AGREEMENTS

**A.** DEVELOPER agrees that each STORE developed under this Agreement will be established and operated under a separate, then current franchise agreement (substantially in the form of the now current Franchise Agreement attached hereto as Exhibit "C") including the then current royalty fee, which shall not exceed five percent (5%), and required advertising fees, which shall not exceed seven percent (7%) for each franchise location within the Development Area. Provided Developer has fully complied with the terms and conditions of this Agreement, including the full payment of the Development Fee, the initial franchise fees shall be as follows:

**B.** The initial franchise fee payable under the franchise agreement executed for the first STORE pursuant to this Agreement shall be Fifteen Thousand Dollars ($15,000) and shall be deemed paid in full.

**C.** The Three Thousand Dollars ($3,000) Development Fee for each STORE after the first STORE shall be credited toward the initial franchise fee for such STORE. The initial franchise fee balance of Twelve Thousand Dollars ($12,000) payable under the franchise agreement for each such STORE shall be made at the earlier of the time DEVELOPER executes a lease for (or purchases) a location for such STORE or sixty (60)

days before the date on which such STORE has been scheduled to open in accordance with the Development Schedule.

7.   **GRANT OF FRANCHISES**

Subject to the provisions of this Agreement, PO agrees to grant franchises to DEVELOPER for the operation of STOREs located within the Development Area as follows:

**A.**   DEVELOPER agrees to provide PO financial information, dated not more than forty-five (45) days prior to the date of this Agreement, and satisfactory in form and substance to PO, reflecting liquid net worth equal to or greater than Twenty-Five Percent (25%) of the Initial Investment (as set forth in PO's current Offering Circular provided to DEVELOPER) for the first STORE and Fifteen (15%) for each STORE after the first STORE. DEVELOPER further agrees to provide PO financial information, dated not more than sixty (60) days prior to the opening date of each subsequent STORE after the first STORE, according to the Development Schedule, reflecting liquid net worth equal to or greater than Twenty-Five Percent (25%) of the Initial Investment (as set forth in POs then current Offering Circular) for such STORE and Fifteen Percent (15%) for each STORE after such subsequent STORE. DEVELOPER understands and agrees that PO may refuse to grant DEVELOPER a franchise for a proposed STORE unless DEVELOPER, in POs reasonable judgment, has demonstrated sufficient financial capabilities to properly develop and operate the proposed STORE.

**B.**   DEVELOPER understands and agrees that the grant of a franchise for each subsequent STORE pursuant to this Agreement is subject to all DEVELOPER's currently open and operating STORES conforming to PO's then current standards for quality, cleanliness, appearance and service, and agrees that PO may refuse to grant DEVELOPER a franchise for a proposed STORE unless DEVELOPER, in PO's reasonable judgment, demonstrates the capabilities to operate all its then currently operating STORES in conformity with PO's standards.

**C.**   DEVELOPER shall submit to PO, in the form prescribed by PO, a description of the location as well as such other information or materials as PO may reasonably require to evaluate the acceptability of any location, and DEVELOPER's prospects for obtaining locations, at least one hundred and fifty (150) days prior to the date each STORE is due to be open and operating according to the Development Schedule. PO may accept or not accept any location submitted by DEVELOPER. PO will accept or not accept each proposed location by giving written notice to DEVELOPER within five (5) business days of the receipt by PO of the completed, required location information. PO will not unreasonably withhold acceptance of any location ("Location Acceptance") that meets its standards for STOREs. If DEVELOPER has not obtained lawful possession of an acceptable proposed location (the "Accepted Location") within sixty (60) days of delivery of Location Acceptance, PO may, at its sole discretion, withdraw such Location Acceptance.

**D.**    Within thirty (30) days of delivery of Location Acceptance, DEVELOPER agrees to submit a copy of the proposed purchase or lease agreement for the Accepted Location to PO for PO's acceptance or non-acceptance. PO's acceptance or non-acceptance of the proposed purchase or lease agreement will be given by written notice within five (5) business days of PO's receipt of the proposed purchase or lease agreements.

**E.**    DEVELOPER shall receive, prior to or concurrent with the written lease acceptance notice, multiple copies of a Franchise Agreement for the Accepted Location and such other documents as PO then currently uses when granting franchises in form for execution by DEVELOPER (and if the Prospective Franchisee is a corporation or partnership, the Prospective Franchisee's owners, as applicable). Prior to the execution of a lease for, or the purchase of, an Accepted Location, DEVELOPER (and the owners of the Prospective Franchisee, if the Prospective Franchisee is a corporation or partnership) shall enter into, with PO, a Franchise Agreement and, as applicable, such other documents delivered to DEVELOPER for the STORE to be developed at the Accepted Location together with the Franchise Fee due thereunder (if the franchise fee was not previously paid when otherwise due and payable according to Section 6.B).

**F.**    If DEVELOPER proposes to enter into a lease agreement for the Accepted Location, DEVELOPER shall provide PO a copy of the proposed lease agreement to PO according to this Section 7.D. The lease shall conform to the requirements of the franchise agreement for that STORE.

(1)    That the premises shall be used only for the operation of the business franchised hereunder.

(2)    That the landlord consents to Franchisee's use of such Proprietary Marks and signage as PO may prescribe for the franchised business, subject, however, to local signage ordinances and landlord signage criteria as consistently applied to the Landlord's property, providing the same is a multi-tenanted property.

(3)    That the landlord agrees to furnish PO with copies of any and all letters and notices sent to Franchisee pertaining to the lease and the premises, at the same time that such letters and notices are sent to Franchisee.

(4)    That Franchisee may not sublease or assign all or any part of its occupancy rights, or extend the term of or renew the lease, without PO's prior written consent.

(5)    That PO shall have the right to enter the premises to make any modification necessary to protect PO's Proprietary Marks or to cure any default under the lease or under this Agreement.

(6)    That PO shall have the option to assume Franchisee's occupancy rights, and the right to sublease, for all or any part of its terms upon Franchisee's default or termination under such lease, or under this Agreement.

(7)    That the term of the lease shall be, with options, at lease ten (10) years.

(8)    If the STORE is to be located in a shopping center or other multi-tenant facility, the landlord agrees that it shall not lease other space within such facility, including any outparcel operated in conjunction with the facility, to any eat-in, take-out or delivery food service entity which has pizza items comprising more than twenty percent (20%) of its menu or representing more than twenty percent (20%) of its sales.

8.    **PREREQUISITE TO RAISING EQUITY CAPITAL**

A.    In the event DEVELOPER (or any of its owners) shall, attempt to raise or secure funds by the sale of securities in a transaction pursuant to Regulation D of the Securities Exchange Act of 1934 or a uniform limited offering exemption under any state securities statutes or in any offering required to be registered under Federal or State securities laws (including, without limitation, common or preferred stock, bonds, debentures or general or limited partnership interests) in DEVELOPER or any affiliate of DEVELOPER, recognizing that the written information used with respect thereto may reflect upon PO, agrees to submit any such written information to PO prior to its inclusion in any offering circular, memorandum or prospectus. No information respecting PO or any of its affiliates shall be included in any securities disclosure document, unless such information has been furnished by PO, in writing, pursuant to the written request of the DEVELOPER, in which the DEVELOPER states the specific purposes for which the information is to be used. Should PO, in its sole discretion, object to any reference to PO or any of its affiliates or to any of their licensees in such offering literature, such literature shall not be used unless and until the objections of PO are withdrawn. PO assumes no responsibility for the offering whatsoever.

B.    DEVELOPER agrees to insert a bold-print message on the first textual page of any offering material stating "Pizza Outlet, Inc. has not been asked and has not passed upon the adequacy or accuracy of any statement made herein. Pizza Outlet, Inc. has not made any recommendation with respect to the quality, suitability or nature of the investment contemplated by the offering. Purchaser will not acquire any interest in Pizza Outlet, Inc. as a result of this offering."

C.    DEVELOPER and each of its owners must indemnify, defend and hold harmless PO and its affiliates, and their respective officers, directors, employees and agents from any and all claims, demands, liabilities, and all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in the defense of such claims, demands or liabilities arising from the offer or sale of such securities, whether asserted by a purchaser of any such security or by a governmental agency. PO shall have the right

(but not the obligation) to defend any such claims, demands or liabilities and/or to participate in the defense of any action to which PO or any of its affiliates or any of their respective officers, directors, employees or agents is named as a party.

**D.**     DEVELOPER shall reimburse PO for its direct and indirect expenses, including without limitation, legal fees, in connection with the offering or proposed offering, not to exceed Five Thousand Dollars ($5,000).

## 9.     MANAGEMENT OF BUSINESS

**A.**     DEVELOPER agrees to designate, in writing, an individual who shall supervise the day-to-day operations and development activities during the term of this Agreement (the "Principal Operator"). The Principal Operator shall hold at least ten percent (10%) in each of the STOREs opened pursuant to the Agreement and shall exert his full-time efforts to his obligations hereunder and shall not engage in any other business or other activity, directly or indirectly, that requires any significant management responsibility, time commitments, or which may otherwise conflict with DEVELOPER's obligations hereunder.

**B.**     DEVELOPER'S Principal Operator and the General Manager, if requested by PO, one other management level individual, of each STORE franchised hereunder, must attend and successfully complete, to PO's satisfaction, PO's certified management training program. The foregoing personnel must be reasonably satisfactory to PO.

**C.**     The Principal Operator must live within thirty (30) miles of the Development Area throughout the term of this Agreement. Following completion of the initial training program, the Principal Operator must act as the manager of the first STORE at least forty (40) hours per week for a period of six (6) months and be certified as a store manger.

**D.**     Any entity, whether a corporation, partnership or otherwise, which is the DEVELOPER hereunder shall not engage in any business other than the development and operation of STOREs pursuant to this Agreement or any other agreements with PO.

## 10.     TERMINATION BY PO

**A.**     DEVELOPER shall be deemed to be in default under this Agreement and all rights granted herein shall automatically terminate without notice to DEVELOPER upon the occurrence of any of the foregoing events:

(1)     If DEVELOPER shall become insolvent or make a general assignment for the benefit of creditors; or (ii) if a petition in bankruptcy is filed by DEVELOPER or such a petition is not dismissed within ninety (90) days; or (iii) if DEVELOPER is adjudicated a bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver of DEVELOPER or other custodian for DEVELOPER'S business or assets is filed

and consented to by DEVELOPER; or (iv) if a receiver or other custodian (permanent or temporary) of DEVELOPER'S assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or (v) if proceedings for a composition with creditors under any state or federal law should be instituted by or against DEVELOPER; or (vi) if a final judgment remains unsatisfied or of record of thirty (30) days or longer (unless supersedeas bond is filed); or (vii) if DEVELOPER is dissolved; or (viii) if execution is levied against DEVELOPER'S business or property; or (ix) if suit to foreclose any lien or mortgage against any of the STOREs premises or equipment is instituted against DEVELOPER and not dismissed prior to levy, but in no case later than thirty (30) days.

**B.**     DEVELOPER shall be deemed to be in default and PO may, at its option, terminate this Agreement and all rights granted hereunder without affording DEVELOPER any opportunity to cure the default, by delivering written notice of default to DEVELOPER, upon the occurrence of any of the following events:

(1)     DEVELOPER fails at any time to open and operate Stores in accordance with the Development Schedule in Exhibit "B".

(2)     DEVELOPER (or, if DEVELOPER is a corporation or partnership, any shareholder or partner of DEVELOPER) makes an unauthorized assignment or transfer of this Agreement or any interest in any STORE or Franchise Agreement granted pursuant to this Agreement.

(3)     A general partnership interest in DEVELOPER is terminated, for whatever reason, in the event this Agreement has been assigned to a partnership.

(4)     DEVELOPER has made any material misrepresentation or omission in its application for the development rights conferred by this Agreement, or is convicted of or pleads no contest to a felony or other crime or offense that may adversely affect the goodwill associated with the Proprietary Marks, or DEVELOPER conducts himself in a manner offensive to decency, morality, or social proprietaries, or becomes involved in a situation which degrades him in society or subjects either him, PO, or the system of STOREs to public disrepute, contempt or scandal.

(5)     DEVELOPER makes any unauthorized use of the Proprietary Marks or unauthorized use or disclosure of the Confidential Information.

(6)     DEVELOPER fails to comply with any provision of this Agreement.

(7)     DEVELOPER violates any covenant term, or condition contained in Section 15 of the franchise agreement attached hereto as Exhibit "C" or any franchise agreement hereinafter entered into between PO and DEVELOPER pursuant to this Agreement; or

(8)     DEVELOPER'S termination of a Franchise Agreement without cause.

Failure by PO to terminate this Agreement pursuant to this Section 10.B shall not constitute a waiver to terminate for subsequent violations.

## 11.    EFFECT OF TERMINATION AND EXPIRATION

A.    Upon termination or expiration of this Agreement for any reason, DEVELOPER'S rights under this Agreement will terminate. PO will thereafter have no further obligation to grant DEVELOPER additional franchises for STOREs (except as otherwise provided in Section 3.B hereof) and will be free to operate, or grant other persons franchises to operate, STOREs within the Development Area.

B.    All obligations of the DEVELOPER under this Agreement which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement and until they are satisfied in full or by their nature expire.

## 12.    COVENANT NOT TO COMPETE

A.    DEVELOPER specifically acknowledges that, pursuant to this Agreement, DEVELOPER will receive valuable specialized training and confidential information, including without limitation, information regarding the operational, sales, promotional and marketing methods and techniques of PO and the System. DEVELOPER covenants that during the term of this Agreement, except as otherwise approved in writing by PO, DEVELOPER shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership or corporation:

(1)    Divert or attempt to divert any business or customer of the business franchised hereunder to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with PO's Proprietary Marks and the System.

(2)    Employ or seek to employ any person who is at that time employed by PO or by any other franchisee or developer of PO, or otherwise directly or indirectly induce such person to leave his or her employment.

B.    DEVELOPER covenants that DEVELOPER shall not, during the term of this Agreement and for a continuous uninterrupted period commencing upon the expiration or termination of this Agreement, regardless of the cause for termination, and continuing for two (2) years thereafter, either directly or indirectly, for itself or through, on behalf of, or in conjunction with any person, persons, partnership or corporation, own, maintain, operate, engage in, or have any interest in any business which is the same as or similar to the franchised business, including without limitation, any pizza and/or any other prepared food delivery business, which business is, or is intended to be, in direct competition with the

STORE(S) or any other corporate, franchised or other STORE, then in existence (including any successors to PO).

    **C.**    Section 10.B(2) shall not apply to ownership by DEVELOPER of less than one (1%) percent beneficial interest in the outstanding equity securities of any publicly-held corporation.

    **D.**    The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 12 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which PO is a party, DEVELOPER expressly agrees to be bound by any lesser covenant determined by such court, it being the intent to be bound by such covenant that imposes the maximum geographical and time duration permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 12.

    **E.**    DEVELOPER understands and acknowledges that PO shall have the right, in its sole discretion, to reduce the scope of any covenant set forth in this Agreement, or any portion thereof, without DEVELOPER's consent, effective immediately upon receipt by DEVELOPER of written notice thereof; and DEVELOPER agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 12 hereof.

    **F.**    DEVELOPER expressly agrees that the existence of any claims it may have against PO, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by PO of the covenants in this Section 12. DEVELOPER agrees to pay all costs and expenses (including reasonable attorneys' fees) incurred by PO in connection with the enforcement of this Section 12.

    **G.**    DEVELOPER acknowledges that DEVELOPER's violation of the terms of this Section 12 would result in irreparable injury to PO for which no adequate remedy at law may be available, and DEVELOPER accordingly understands that PO may seek the issuance of an injunction prohibiting any conduct by DEVELOPER in violation of the terms of this Section 12.

    **H.**    At PO's request, DEVELOPER shall require and obtain execution of covenants similar to those set forth in this Section 12 (including covenants applicable upon the termination of a person's relationship with DEVELOPER) from any or all of the following persons: (1) all managers of DEVELOPER and any other personnel employed by DEVELOPER who have received or will receive training from PO; (2) all officers, directors, and holders of a beneficial interest of one (1%) percent or more of the securities of DEVELOPER, and of any corporation directly or indirectly controlling DEVELOPER, if DEVELOPER is a corporation; and (3) the general partners and any limited partners (including any corporation, and the officers, directors and holders of a beneficial interest of one (1%) percent or more of the securities of any corporation which controls, directly or indirectly any general or limited partner), if DEVELOPER is a partnership. Every covenant

required by this Section 12 shall be in a form satisfactory to PO, including, without limitation, specific identification of PO as a third party beneficiary of such covenants with the independent right to enforce them. Failure by DEVELOPER to obtain execution of a covenant required by this Section 12 shall constitute a default under Section 10 hereof.

13.    **ASSIGNMENT**

   **A.**    This Agreement is fully assignable by PO and shall inure to the benefit of any assignee or other legal successor to the interests of PO herein.

   **B.**    DEVELOPER understands and acknowledges that the rights and duties created by this Agreement are personal to DEVELOPER, and that PO has granted this Agreement in reliance upon the individual or collective character, skill, aptitude, attitude, business ability, and financial capacity of DEVELOPER (or its shareholders or partners, if DEVELOPER is a corporation or partnership). Therefore, neither this Agreement (or any interest therein), nor any part or all of the ownership of DEVELOPER, nor any part of the development rights granted hereunder, may be voluntarily, involuntarily, directly or indirectly, assigned, sold, subdivided, subfranchised, or otherwise transferred by DEVELOPER or its owners (including without limitation, by consolidation or merger, by issuance of securities representing an ownership interest in DEVELOPER, by conversion of a general partnership to a limited partnership, by transfer or creation of an interest as a general partner of a limited partnership, by transfer of an interest in DEVELOPER or in this Agreement in a divorce proceeding, or in the event of the death of DEVELOPER or an owner of DEVELOPER, by will, declaration of or transfer in trust or the laws of the intestate succession), without the prior written consent of PO. Any purported assignment or transfer without such consent as required by this Section 13.B shall be null and void and shall constitute a material breach of this agreement for which PO may then terminate without cure pursuant to Section 10 B of this Agreement. Furthermore, DEVELOPER may not retain or otherwise contract with any entity which is not a party to this Agreement to provide oversight, management or administrative services for STOREs developed pursuant to this Agreement unless such entity is either an employee of DEVELOPER or has been approved in writing by PO. PO may condition such approval on the receipt of a Covenants Agreement from the principals of such entity as well as anyone attending any or all of PO's management training program.

   **C.**    PO shall not unreasonably withhold its consent to a transfer of any interest in DEVELOPER or in this Agreement; provided, however, that if a transfer, alone or together with other previous, simultaneous or proposed transfers, would have the effect of transferring a controlling interest in the DEVELOPER or this Agreement, PO may, in its sole discretion, require any or all of the following as conditions of its approval:

      (1)    All of DEVELOPER's accrued monetary obligations and all other outstanding obligations to PO, its subsidiaries, and its affiliates shall have been satisfied;

(2)     DEVELOPER is not in default of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between DEVELOPER and PO, or its subsidiaries and affiliates;

(3)     DEVELOPER shall have executed and delivered to PO a general release, in a form satisfactory to PO, of any and all claims against PO and its officers, directors, shareholders and employees, in their corporate and individual capacities, including, without limitation, claims arising under federal, state and local laws, rules and ordinances;

(4)     The transferee shall enter into a written assignment, and in a form satisfactory to PO, assuming and agreeing to discharge all of the DEVELOPER's obligations under this Agreement; and, if the obligations of DEVELOPER were guaranteed by the transferor, the transferee shall guarantee the performance of all such obligations in writing in a form satisfactory to PO;

(5)     The transferee shall demonstrate to PO's satisfaction that it meets PO's educational, managerial and business standards; possesses a good moral character, business reputation and credit rating; has the aptitude and ability to conduct the business franchised herein (as may be evidenced by prior related business experience or otherwise); and has adequate financial resources and capital to operate the business, as set forth in Section 7 (a) of this Agreement;

(6)     The DEVELOPER shall also transfer any  STOREs operating in the Development Area and owned by DEVELOPER in conjunction with all development rights granted hereunder.  Transfer of partial development rights is prohibited;

(7)     The DEVELOPER shall have in operation in the Development Area at least one (1) STORE;

(8)     DEVELOPER shall remain liable for all of the obligations to PO in connection with the franchised business prior to the effective date of the transfer and shall execute any and all instruments reasonably requested by PO to evidence such liability.

(9)     At the transferee's expense, the transferee, if the transferee is an individual, the transferee's General Manager, and one (1) other person to be employed in the STOREs and designated by the transferee, shall complete any training programs then in effect for franchisees upon such terms and conditions as PO may reasonably require;

(10)     Except in the case of a transfer to a corporation formed for the convenience of ownership or transfers among existing shareholders, DEVELOPER shall pay a transfer fee equal to Three Thousand and no/100 ($3,000.00) Dollars in addition to the transfer fees due under franchise agreement in effect pursuant to this Agreement to reimburse PO for its reasonable costs and expenses associated with reviewing the application to transfer, including, without limitation, legal and accounting fees

14. **RIGHT OF FIRST REFUSAL**

      **A.**    Any party holding any direct or indirect interest in DEVELOPER or in this Agreement and who desires to accept any bona fide offer from a third party to purchase such interest shall notify PO in writing of each such offer, and shall provide such information and documentation relating to the offer as PO may require. PO shall have the right and option, exercisable, within thirty (30) days after receipt of such written notification (along with all information and documentation relating to the offer), to send written notice to the seller that PO intends to purchase the seller's interest on the same terms and conditions offered by the third party. In the event that PO elects to purchase the seller's interest, closing on such purchase must occur within thirty (30) days from the date of notice to the seller of the election to purchase by PO. Any material change in the terms of any offer prior to closing shall constitute a new offer subject to the same right of first refusal by PO as in the case of an initial offer. Failure of PO to exercise the option afforded by this Section 14 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 14, with respect to a proposed transfer.

      **B.**    In the event PO exercises its right of first refusal, the Agreement of Sale relating to such sale shall contain customary representations and warranties given by the Seller of the assets of a business or voting stock of any incorporated business, as applicable, including, without limitation, representations and warranties as to ownership, condition of and title to stock and/or assets, liens and encumbrances relating to the stock and/or assets and validity of contracts.

15. **WAIVER**

      **A.**    PO makes no warranties or guarantees upon which DEVELOPER may rely, and assumes no liability or obligation to DEVELOPER, by granting any waiver, approval, or consent to DEVELOPER, or by reason of any neglect, delay, or denial of any request therefor. Any waiver granted by PO shall be without prejudice to any other rights PO may have, will be subject to continuing review by PO, and may be revoked, in PO's sole discretion, at any time and for any reason, effective upon delivery to DEVELOPER of ten (10) days prior written notice.

      **B.**    PO and DEVELOPER shall not be deemed to have waived or impaired any right, power or option reserved by this Agreement (including, without limitation), the right to demand exact compliance with every term, condition and covenant herein, or to declare any breach thereof to be a default and to terminate this Agreement prior to the expiration of its term, by virtue of any custom or practice of the parties at variance with the terms hereof; any failure, refusal, or neglect of PO or DEVELOPER to exercise any right under this Agreement or to insist upon exact compliance by the other with its obligations hereunder; any waiver, forbearance, delay, failure, or omission by PO to exercise any right, power, or option, whether of the same, similar or different nature, with respect to any STOREs or any development or franchise agreements therefor; any grant of a Franchise

Agreement to DEVELOPER; or the acceptance by PO of any payment from DEVELOPER after any breach of this Agreement.

      **C.**     Neither PO nor DEVELOPER shall be liable for loss or damage or deemed to be in breach of this Agreement if its failure to perform its obligations results from: (1) compliance with any law, ruling, order, regulation, requirement, or instruction of any federal, state, or municipal government or any department or agency thereof; (2) acts of God; (3) acts or omissions of the other party; (4) fires, strikes, embargoes, war, or riot; or (5) any other similar event or cause which are force majeure in nature. Any delay resulting from any of said causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable.

## 16.   INDEPENDENT CONTRACTORS/INDEMNIFICATION

PO and DEVELOPER are independent contractors. Neither PO nor DEVELOPER shall be obligated by or have any liability under any agreements, representations, or warranties made by the other that are not expressly authorized hereunder, nor shall PO be obligated for any damages to any person or property directly or indirectly arising out of the operation of DEVELOPER's business conducted pursuant to this Agreement, whether or not caused by DEVELOPER's negligent or willful action or failure to act. PO shall have no liability for any sales, use, excise, income, gross receipts, property, or other taxes levied upon DEVELOPER or its assets or upon PO in connection with the business conducted by DEVELOPER, or any payments made by DEVELOPER to PO pursuant to this Agreement or any Franchise Agreement. DEVELOPER agrees to indemnify PO and its subsidiaries, affiliates, stockholders, directors, officers, employees, agents and assignees against and to reimburse them for all such obligations, damages, and taxes for which they are held liable and for all costs reasonably incurred by them in the defense of any such claim brought against them or in any action in which they are named as a party, including without limitation, reasonable attorneys' and expert witness fees, cost of investigation and proof of facts, court costs, other litigation expenses, and travel and living expenses. PO shall have the right to defend any such claim against it. The indemnities and assumptions of liabilities and obligations herein shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

## 17.   NOTICES AND PAYMENTS

Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered or mailed by certified or registered mail, return receipt requested, to the respective parties at the addresses set forth on page 1 of this Agreement, addressed in the care of PO, to Varol Ablak, President, unless and until a different address has been designated by written notice to the other party.

Any notice by certified or registered mail shall be deemed to have been given at the date and time of receipt.

## 18.    ACKNOWLEDGMENTS AND COVENANTS

**A.**    DEVELOPER acknowledges that PO's approval of sites for STOREs and any information communicated to DEVELOPER regarding proposed sites do not constitute a representation or warranty of any kind, express or implied, as to the suitability of the proposed sites for STOREs or for any other purpose. Such approval indicates only that PO believes that the particular sites fall within the acceptable criteria established by PO as of the time period encompassing the evaluation. Both DEVELOPER and PO acknowledge that application of site criteria that have been effective with respect to other sites may not be predictive of potential for all sites and that, subsequent to PO's approval of a site, demographic and/or economic factors, including competition from other food service businesses, included in or excluded from PO's site criteria could change, thereby altering the potential of the site. The uncertainty and instability of such criteria are beyond PO's control, and PO shall not be responsible for the failure of the site approved by PO to meet expectations as to potential revenue or operational criteria.

**B.**    DEVELOPER acknowledges that in order to preserve and enhance the reputation and goodwill of all STOREs and the goodwill of the marks, all STOREs must be properly developed and operated. Accordingly, DEVELOPER agrees that PO may refuse to grant to DEVELOPER a franchise for a proposed STORE, unless DEVELOPER meets the standard financial capability criteria as may be developed from time-to-time by PO. To this end, DEVELOPER shall furnish to PO such financial statements and financial and other information regarding DEVELOPER and the development and operation of the proposed STORE (including, without limitation, pro forma statements and investment and financing plans for the proposed STORE as PO may reasonably require).

**C.**    DEVELOPER understands and acknowledges the importance of PO's high standards of quality, cleanliness, appearance and service and the necessity of operating the businesses franchised hereunder in conformity with PO's standards and specifications as well as the necessity for protecting any proprietary information provided to DEVELOPER hereunder.

**D.**    DEVELOPER acknowledges that he has conducted an independent investigation of the business contemplated by this Agreement and recognizes that, like any other business, the nature of the business conducted by STOREs may evolve and change over time, that an investment in a STORE involves business risks and that the success of the venture is largely dependent upon the business abilities and efforts of DEVELOPER.

**E.**    DEVELOPER acknowledges that he has not received or relied upon, and PO expressly disclaims the making of, any warranty or guaranty, express or implied, as to the revenues, profits or success of the business venture contemplated by this Agreement. DEVELOPER acknowledges that he has not received or relied on any representations about the franchise by PO, or its officers, directors, employees or agents, that are contrary to the statements made in PO's Franchise Offering Circular, which DEVELOPER

acknowledges receiving at least ten (10) days prior to the execution hereof, to the terms herein, and further represents to PO, as an inducement to its entry into this Agreement, that DEVELOPER has made no misrepresentations to PO in his application for the development rights granted hereunder. Notwithstanding the foregoing, the Earnings Claim set forth at Item 19 to PO's Offering Circular has been provided for informational purposes only and may not be relied upon or used against PO, its successors, assigns and affiliates.

19.  **MISCELLANEOUS**

A.  **Specific Performance/Injunctive Relief** Nothing herein contained shall bar PO's right to obtain specific performance of the provisions of this Agreement and injunctive relief against threatened conduct that will cause it loss or damages, under customary equity rules, including applicable rules for obtaining restraining orders and preliminary injunctions. DEVELOPER agrees that PO may have such injunctive relief, without bond, but upon due notice, in addition to such further and other relief as may be available at equity or law.

B.  **Rights of Parties Are Cumulative** The rights of PO and DEVELOPER hereunder are cumulative and no exercise or enforcement by PO or DEVELOPER of any right or remedy hereunder shall preclude the exercise or enforcement by PO or DEVELOPER of any other right or remedy hereunder or which PO or DEVELOPER is entitled by law or equity to enforce.

C.  **Governing Law** This Agreement and all claims arising from the relationship between the DEVELOPER and PO shall be governed by the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws principles.

D.  **Exclusive Jurisdiction** DEVELOPER and PO agree that any action arising out of or relating to this Agreement (including, without limitation, the offer and sale of this Agreement) and the relationship of the parties shall be instituted and maintained only in a state or federal court of general jurisdiction in Allegheny County, Pennsylvania, and DEVELOPER irrevocably submits to the jurisdiction of such court(s) and waives any objection he may have to either the jurisdiction or venue of such court.

E.  **Binding Effect** This Agreement is binding upon the parties hereto and their respective executors, administrators, heirs, assigns, and successors in interest, and shall not be modified except by written agreement signed by both DEVELOPER and PO.

F.  **Construction**

(1)  The introduction and exhibit(s) are a part of this Agreement, which constitutes the entire agreement of the parties, and there are no other oral or written understandings or agreements between PO and DEVELOPER relating to the subject matter of this Agreement.

(2)    Nothing in this Agreement is intended, nor shall be deemed, to confer any rights or remedies upon any person or legal entity not a party hereto.

(3)    The headings of the several sections and paragraphs hereof are for convenience only and do not define, limit or construe the contents of such sections or paragraphs.

(4)    The term "DEVELOPER" as used herein is applicable to one or more persons, a corporation or a partnership, as the case may be, and the singular usage includes the plural and the masculine and neuter usages include the other and the feminine. If two or more persons are at any time DEVELOPER hereunder, their obligations and liabilities to PO shall be joint and several. References to "DEVELOPER" and "assignee" which are applicable to an individual or individuals shall mean the owner(s) of the equity or operating control of DEVELOPER or the assignee, if DEVELOPER or the assignee is a corporation or partnership.

(5)    This Agreement shall be executed in multiple copies, each of which shall be deemed an original.

**IN WITNESS WHEREOF,** the parties hereto have executed, sealed and delivered this Agreement on the day and year first above written.

DEVELOPER:                          VOCELLI PIZZA LP
                                    By: Pizza Outlet, Inc., its general partner


By:_____        By: _____

Title:_____       Title: _____

By: _____
    Burak S. Kotan, Individually

By: _____
    Mert Onur, Individually

EXHIBIT "A"

TO
VOCELLI® Pizza DEVELOPMENT AGREEMENT
BY AND BETWEEN
PIZZA OUTLET, INC.

AND  BURAK S. KOTAN AND MERT ONUR

DATED  FEBRUARY   25th , 2004

The Development Area referred to in Section 1 of the captioned agreement shall be:

The Western portion of the District of Columbia to include zip codes 20015, 20016, 20008, 20007, 20009, 20063, 20036,  20037, 20006, 20004, 20005, 20001 in their entirety.  In addition, portions of  zip code 20010.  The area is more specifically outlined on the attached map.

DEVELOPER:

By:_____

Title:_____

By: _____
       Burak S Kotan, Individually

By: _____
       Mert Onur,  Individually

**VOCELLI PIZZA L.P**
By:  Pizza Outlet, Inc., its general partner

By:_____

Title:___President / CEO_____

EXHIBIT "B"

## TO VOCELLI® Pizza DEVELOPMENT
## AGREEMENT BY AND BETWEEN PIZZA OUTLET, INC.
## AND__BURAK S KOTAN AND MERT ONUR
### DATED__FEBRUARY 20ᵗʰ, 2004

Development Fee:__THIRTY THOUSAND_____ ($30,000.00) Dollars.
Expiration Date:_____JUNE 1, 2007_____

### MINIMUM DEVELOPMENT OBLIGATION

| STORE NUMBER | OPEN AND OPERATING ON OR BEFORE | INITIAL FRANCHISE FEE DUE EACH FRANCHISE AGREEMENT |
|:---:|:---:|:---:|
| 1 | December 1, 2004 | Paid |
| 2 | June 1, 2005 | $12,000 |
| 3 | December 1, 2005 | $12,000 |
| 4 | June 1, 2006 | $12,000 |
| 5 | December 1, 2006 | $12,000 |
| 6 | June 1, 2007 | $12,000 |

**DEVELOPER:**

By:_____

Title:_____

By:_____
  Burak S Kotan, Individually

By:_____
  Mert Onur,  Individually

**VOCELLI PIZZA LP**
By:  Pizza Outlet, Inc., its general partner

By:_____
  Varol Ablak, President & CEO

kotan and onur - DC 6 stores DA doc

**EXHIBIT "B"**

**Bob Montanari**

| | |
|---|---|
| **From:** | BKotan@kotan cc |
| **Sent:** | Monday, September 27, 2004 3:00 PM |
| **To:** | Tiffini A  Carvell |
| **Subject:** | Extension request |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Dear Tiffini,

Due to unexpected circumstances that you are aware of, we will not be able to meet our December deadline in opening first Vocelli franchise store in District of Colombia  We kindly request you to move our Dec 2004 deadline to June 2005

We would appreciate if you get back to us as soon as possible about this matter

Best regards,

Burak S Kotan (BK)

11/8/2004

**EXHIBIT "C"**

# VOCELLI. PIZZA
## Classic Italian Quality

September 30, 2004

Burak Kotan
854 Quince Orchard Blvd #101
Gaithersburg, MD  20878

Dear BK:

We have received your email on Monday, September 27, 2004, which you request an extension for your first store opening in the District of Columbia.

We will grant you the extension on your first store opening from December 1, 2004 to June 1, 2005.

If I can be of any further help to you, please do not hesitate to contact me at 412-278-0394.

Sincerely,

Melissa Close
Franchise Sales Manager

EXHIBIT "D"



April 21, 2005

Via Certified Mail: Z090153645

Burak Kotan
Mert Onur
854 Quince Orchard Blvd #101
Gaithersburg, MD 20878

Dear BK,

I was looking forward to meeting you at the IFE with Varol   Obviously, you were unable to make it

I must inform you that on September 30, 2004, Vocelli Pizza issued you an extension to June 1, 2005 for your first store opening  To date, no store has been opened or is in the process of being opened  As well, we have talked on several occasions about resolving your partnership differences with Mert Onur  I have attempted to act as an intermediary to assist you. Discussions with you and your attorney led me to believe your issues with Mert Onur would be resolved in a timely manner

Since we have not heard anything regarding your intent to move forward with the development of your development area in Washington, DC, we must advise you that effective June 2, 2005 all development territory will revert back to Vocelli Pizza

I truly wish you the best in your endeavors   Please do not hesitate to call should you have any questions

Yours truly,

Bob Montanari
Dir. of Franchise Sales & Development

cc:  V. Ablak, D  Morrison, J  Sclabassi, R  Krouse, D  Freund



April 21, 2005

Via Certified Mail:  Z090153647

Mert Onur
9816 Grand Verde Way, Apt : 302
Boca Raton, FL 33428

Dear Mert,

I hope all is well with you!

I must inform you that on September 30, 2004, Vocelli Pizza issued you and Burak Kotan an extension to June 1, 2005 for your first store opening  To date, no store has been opened or is in the process of being opened  As well, we have talked on several occasions about resolving your partnership differences with Burak Kotan. I have attempted to act as an intermediary to assist you. Discussions with Burak Kotan's attorney led me to believe your issues with the partnership would be resolved in a timely manner

Since we have not heard anything regarding your or Burat Kotan's intent to move forward with the development of your development area in Washington, DC, we must advise you that effective June 2, 2005 all development territory will revert back to Vocelli Pizza

I truly wish you the best in your endeavors  Please do not hesitate to call should you have any questions

Yours truly,

Bob Montanari
Dir. of Franchise Sales & Development

cc: V Ablak, D Morrison, J Sclabassi, R Krouse, D Freund

EXHIBIT "E"



May 9, 2005

**Via Certified Mail: 7003 2260 0002 9169 6722**

John M  Shoreman
McFadden & Shoreman, LLC
1800 L Street, N W., Suite 802
Washington, DC  20036
Phone: 202 638-2100
Fax:    202 638-6783

RE:  Burak Kotan & Mert Onur, DC Development Agreement

Dear Mr. Shoreman:

We are in receipt of your letter of April 27, 2005 requesting recovery of Mr. Kotan's development fee
for the DC area. On February 20th, 2004, Mr. Kotan and Mr. Onur entered into a Development
Agreement with Vocelli Pizza. In section 5 (Development Fee), the agreement clearly states that the
development fee is non-refundable if the franchisee fails to open stores according to the schedule
specified in the agreement

The agreement required the first store to have been opened by December 1st, 2004, with the second
store scheduled to open no later than June 2, 2005. When Mr. Kotan and Mr. Onur failed to open their
first store as scheduled, on September 30th, 2004, Vocelli Pizza granted an extension of six months to
June 1st, 2005, as a gesture of good faith. As of the date of this letter, Vocelli Pizza has received no
indication of Mr. Kotan & Mr. Onur's good faith effort to secure a lease, let alone open a store.

The Development Agreement between Mr. Kotan and Mr. Onur and Vocelli Pizza called for two
stores to be opened by June 2, 2005. Their failure to do so has cost Vocelli Pizza franchise fees,
royalty income, exposure and brand recognition. Furthermore, Mr. Kotan is in default of the
Development Agreement by failing to provide written evidence to Vocelli Pizza of an agreement
between Mr. Kotan and his Partner (Mr. Onur) as required in the Development Agreement, Section 9
(MANAGEMENT OF BUSINESS), Paragraph A.

As a result of Mr. Kotan's failure to comply with the terms of the agreement, significant income has been denied to Vocelli Pizza. Since Mr. Kotan has neither presented to Vocelli Pizza any evidence that he has made a good faith effort to comply with the terms of the agreement by taking steps to open stores, nor provided evidence of an Agreement between him and his Partner, Vocelli Pizza will exercise its full rights under the agreement by terminating the Development Agreement between Mr. Kotan & Mr. Onur and Vocelli Pizza on June 2, 2005. This termination will result in the forfeiture of franchise and development fees paid to Vocelli Pizza as provided for in the Franchise and Development Agreements.

Sincerely,

Bob Montanari
Director of Franchise Sales

cc:     Varol Ablak
        Don Morrison
        Rick Krouse