UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BURAK S. KOTAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. Action No. 05-01119 (RCL) |
| PIZZA OUTLET, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion [2] of defendants Pizza Outlet, Inc. ("Pizza Outlet") and Vocelli Pizza, L.P. ("Vocelli") to dismiss or, in the alternative, to transfer this case to the Western District of Pennsylvania. Pizza Outlet and Vocelli (collectively "franchisors") claim that pursuant to a forum selection clause in their franchise agreement with plaintiff Kotan, the Western District of Pennsylvania is the only proper federal venue for this action. They also claim that the District of Columbia is an improper venue for this action for reasons of convenience of parties and witnesses, a claim the plaintiffs refute. The franchisors request that this Court either dismiss the case pursuant to 28 U.S.C. § 1406(a) or use its discretion under 28 U.S.C. § 1404(a) to transfer the case. Upon consideration of the parties' filings, the applicable law and the record herein, the Court shall deny the franchisors' motion to dismiss but grant their motion to transfer the case to the Western District of Pennsylvania.

## I. BACKGROUND

The plaintiffs in this action are Burak S. Kotan, a resident of Maryland, and MB Group, Inc., a Maryland corporation of which Kotan is the principal. The defendants include the franchisors, both Pennsylvania corporations, and two of their franchisees, Randy Fox of Reston, Virginia and Umit Yugit of Pompano Beach, Florida. The underlying dispute stems out of a contract between Pizza Outlet and Kotan. Pizza Outlet and Vocelli franchise retail pizza restaurants nationwide under the Vocelli name. Seeking to develop and operate several Vocelli restaurants in the District of Columbia, Kotan and his then-partner Mert Onur entered into a partnership agreement and established MB Group for this purpose. On February 20, 2004, they signed an agreement with Pizza Outlet ("Development Agreement"), requiring them to open a certain number of stores. Paragraph 19(D) of the Development Agreement contains a forum selection clause, which states:

> <u>Exclusive Jurisdiction</u>   DEVELOPER [Kotan] and PO [Pizza Outlet] agree that any action arising out of or relating to this Agremnt . . . and the relationship of the parties shall be instituted and maintained only in a state or federal court of general jurisdiction in Allegheny County, Pennsylvania, and DEVELOPER irrevocably submits to the jurisdiction of such court(s) and waives any objection he may have to either the jurisdiction or venue of such court.

(Mot. Dismiss Ex. A.at 18) On June 1, 2005, the plaintiffs filed this action in the Superior Court for the District of Columbia alleging tortious interference, breach of contract, fraud and deceit, and misrepresentation. On June 6, 2005, the defendants removed the case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1441 and in accordance with 28 U.S.C. § 1446. On June 23, 2005, the franchisors filed the present motion.

## II. DISCUSSION

*A. Defendants' Motion to Dismiss*

The franchisors' motion to dismiss is premised on 28 U.S.C. § 1406(a) (1993), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

In support of this motion the franchisors claim that venue in the District of Columbia is improper because of the mandatory forum selection clause contained in the Development Agreement. (Mot. Dismiss 4-6.) However, the franchisors' reliance on § 1406(a) is misplaced. In accordance with the plain language of § 1406(a), a court may only act pursuant to this statute when a case is *filed* in the wrong venue. While questions of venue are generally resolved in accordance with § 1391, when a case is removed from state court to federal court, the removal statute, 28 U.S.C. § 1441, dictates venue. *Polizzi v. Cowles Magazines*, 345 U.S. 663, 665 (1953). Section 1441(a) expressly provides that "the district court of the United States for the district and division embracing the place where such action is pending" is the proper venue of a removed action. 28 U.S.C. § 1441(a) (1994). Because this case was filed in the Superior Court for the District of Columbia and defendants voluntarily removed it to this Court, this Court is the proper venue under § 1441(a). *See Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 725 F. Supp. 317, 320 (S.D. Miss. 1989) ("[D]efendant's voluntary application for removal confers venue over him."). Thus, the franchisors' objection under § 1406(a) to the propriety of venue in this district is not valid. *See* 14C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3726, at 123-24 (3d ed. 1998) (explaining that after an action is removed pursuant

3

to § 1441, objections to venue based on § 1406(a) are not applicable even if venue is improper under § 1391). This Court therefore denies the franchisors' motion to dismiss.

B. *Defendants' Motion to Transfer to Another Venue*

    *1. Legal Standard*

Foreseeing the possibility that this Court may deny their motion to dismiss the case, the franchisors requested in the alternative that this Court transfer the case to the Western District of Pennsylvania. In accord with the Court's reasoning *supra* Part II.A, the franchisors correctly note that the motion to transfer is governed by 28 U.S.C. § 1404(a). *See Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.*, 2004 WL 1630488, at *2 n.1 (D.N.J. 2004) (explaining that after an action is removed from state to federal court, transfer of venue is "governed *only* by 28 U.S.C. § 1404(a)") (emphasis added). Section 1404 gives a district court discretion to "transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (1993).

In *Stewart Org., Inc. v. Ricoh Corp.*, the Supreme Court held that 28 U.S.C. § 1404(a) controls the issue of whether to transfer a case to another judicial district in accordance with a forum selection clause in a contract between the parties. 487 U.S. 22, 28-29 (1988). Previously, in *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that forum selection clauses are presumptively valid, unless the resisting party can show that enforcement of the clause would be "unreasonable under the circumstances." 407 U.S. 1, 10 (1972) (internal quotation marks omitted). *M/S Bremen* involved a federal district court sitting in admiralty, but the presumption in favor of the enforceability of forum selection clauses has been widely adopted in diversity actions, including actions in this Court. *See Stewart*, 487 U.S. at 33 (Kennedy, J., concurring) (noting that the reasoning in *M/S Bremen* regarding the enforcement of forum selection clauses

"applies with as much force to federal courts sitting in diversity"); *see*, *e.g.*, *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 58 (D.D.C. 2001) (quoting with approval the relevant language from *M/S Bremen* in a diversity action); *Marra v. Papandreou* (*Marra I*), 59 F. Supp. 2d 65, 70 (D.D.C. 1999) (holding that forum selection clauses should be enforced "in all but the most exceptional" circumstances) (citation omitted), *aff'd*, 216 F.3d 1119 (2000). However, per *Stewart*, a court must evaluate a § 1404(a) motion to transfer "according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart*, 487 U.S. at 29 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Such an analysis calls for a balancing of a number of factors, and "[t]he presence of a forum-selection clause . . . [will] figure[] centrally in the district court's calculus." *Stewart*, 487 U.S. at 29.  Under the guidance of § 1404(a), a court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"[1]  *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

As a matter of policy, forum selection clauses are granted significant weight in venue transfer motions because:

---

[1] This Court has previously defined additional factors that it may consider in ruling on a motion to transfer under § 1404(a):

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Trout Unlimited v. U.S. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C.,1996) (footnotes omitted), *quoted by Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).

> [A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991).  This Circuit has characterized a forum selection clause as "a separate contract in which the parties agree to venue" and further observed that "a forum-selection clause is best understood as . . . [an] *ex ante* agreement to waive venue objections to a particular forum."  *Marra v. Papandreou* (*Marra II*), 216 F.3d 1119, 1123-24 (D.C. Cir. 2000).  Hence, while this Court does not grant it dispositive weight, the forum selection clause between the franchisors and Kotan is a major consideration in the Court's evaluation the franchisors' motion to transfer.

   *2. Propriety of Venue in Western District of Pennsylvania*

   Before delving into its analysis under § 1404(a), the Court must ascertain whether venue in the transferee district would be proper.  *See In re Scott*, 709 F.2d 717, 719-20 (D.C. Cir. 1983) (holding that § 1404(a) "expressly requires that the transferee court be a place of proper venue") (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  Given that Kotan reached out to the franchisors, both Pennsylvania corporations, seeking to enter a contractual relationship with them, and signed a franchise agreement to that effect, venue in the Western District of Pennsylvania is proper as that is where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2) (1993).  Furthermore, in signing the Development Agreement that included the forum selection clause, Kotan waived any objection to venue in the United States District Court for the Western District of Pennsylvania, which is the federal court with jurisdiction over Allegheny County, Pennsylvania.

6

*3. Enforceability and Weight of Forum Selection Clause*

The Court starts its analysis under § 1404(a) by first turning to the forum selection clause (quoted *supra* Part I).  Pursuant to the clear language of the forum selection clause, the United States District Court for the Western District of Pennsylvania has jurisdiction over Allegheny County, Pennsylvania, and is thus the proper federal venue for any disputes arising under the Development Agreement.  Plaintiffs do not claim that the forum selection clause is the result of fraud on the part of the franchisors.  *Cf. Marra II*, 216 F.3d at 1124 (observing that allegations of fraud are a common reason for non-enforcement of a forum selection clause); *Marra I*, 59 F. Supp. 2d at 70 (holding that a court will not enforce a forum selection clause if the opposing party shows fraud or overreaching).  Rather, they suggest that since MB Group was not party to the Development Agreement, it should not be bound by the forum selection clause.  (Pls.' Opp'n ¶ 1.)

The Court is not persuaded by this argument.  Kotan is the principal of MB Group (Compl. ¶ 3) and Kotan and his former business partner established MB Group for the express purpose of developing and operating Vocelli Pizza stores in the District of Columbia (Compl. 2). MB Group's claims against the defendants flow out of out of Kotan's interactions with the defendants.  Were this Court to rule that the forum selection clause does not apply to MB Group, a plaintiff in a civil action could simply join a newly-formed corporation to its complaint to defeat an otherwise valid forum selection clause.  Plaintiffs also suggest that Vocelli, unlike Pizza Outlet, was not a party to the forum selection clause.  (Pls.' Opp'n ¶ 1; Mem. P. & A. Supp. Pls.' Opp'n 4.)  Pizza Outlet and Vocelli are general partners (Reply 2) and the Development Agreement was apparently signed by the President and CEO of Pizza Outlet on behalf of Vocelli.  (Mot. Dismiss Ex. A at 19).  As this Court previously noted, "[a] non-party is

7

bound by a contract term if it is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Marra I*, 59 F. Supp. 2d at 77 (quoting *Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). Hence, any inferences this Court draws from the forum selection clause will apply with equal force to both plaintiffs and both franchisors.

The forum selection clause gave Kotan "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign," i.e., the Western District of Pennsylvania. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (finding, based on a choice of law provision, in personam jurisdiction over a non-resident who had entered a franchise agreement with a local company). When Kotan willingly reached out to the franchisors, both Pennsylvania corporations, seeking to do business with them and signed the Development Agreement, he could have reasonably foreseen the inconveniences he now claims will result if the forum selection clause is enforced. *See 2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 58 ("Plaintiff evidently agreed that any inconveniences were manageable when it agreed to [the] inclusion [of a forum selection clause] in the Option Agreement."). Thus, this "*ex ante* agreement to waive venue objections to a particular forum," *Marra II*, 216 F.3d at 1123, colors plaintiffs' other arguments premised on the inconvenience to parties and witnesses, and interests of justice.

### 4. Private Interests of the Parties

Another factor in this Court's analysis under § 1404(a) is the plaintiffs' choice of forum, which is usually granted some deference in a venue analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (noting a "strong presumption in favor of the plaintiff's choice of forum"); *cf. BMX Elecs., Inc. v. Control Data Corp.*, 1987 WL 19212, at *1 (D.D.C. 1987) (noting that while "plaintiff's choice of forum deserves some weight," courts disagree about how

much weight to give it, ranging from "some weight" to "substantial deference") (citations omitted).  However, substantially less deference is granted to a plaintiff's choice of forum if it is not the plaintiff's home forum.  *See Cal. Farm Bureau Fed. v. Badgley*, 2005 WL 1532718, at *2 (D.D.C. 2005) (Lamberth, J.); *Weinberger v. Tucker*, 2005 WL 2402887, at *4 (D.D.C. 2005); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002).  Kotan is a resident of the state of Maryland and MB Group is a Maryland corporation with its offices in Gaithersburg, Maryland.  This Court takes into account Maryland's proximity to the District of Columbia, but while the District of Columbia may be more convenient for the plaintiffs (Pls.' Opp'n ¶ 3), the plaintiffs' home forum is nonetheless the District of Maryland.  On the other hand, the defendants have expressed a clear preference for the Western District of Pennsylvania, which is their home forum, and where the claim originated with the signing of the Development Agreement.

     A related factor, to which this Court now turns, is the convenience of the parties.  Plaintiffs claim that the District of Columbia is more convenient because their documents are located in the "District of Columbia area," because Kotan conducts business "in the DC Metropolitan area," and because MB Group does not have the resources to litigate in a foreign forum.  (Mem. P. & A. Supp. Pls.' Opp'n 4.)  The court in *Moses*, 929 F. 2d at 1138-39, discussed the question of economic disparity between franchisors and franchisees, and while the record in *Moses* was more complete than it is in this case, much of the discussion is applicable:

> Almost inevitably there is some disparity of economic power between franchisor and franchisee.  Nevertheless, this record does not contain the picture of totally unsophisticated and inexperienced persons accepting every condition imposed by a franchisor. . . .

> . . .
> With respect to the claim of financial hardship, . . . Mr. Moses was unable to estimate how much more it would cost to try the case in Michigan than in Alabama. There is no reason why the testimony of witnesses could not be presented by deposition. Of course, the plaintiffs rather than the defendants would be required to bear the expense of travel. This is inherent in a forum selection clause. Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others. This is not a reason for declaring such clauses invalid.

In addition, Kotan has not demonstrated any great hardship such as inability to travel, significant expense, or medical disability that would adversely affect his ability to litigate this case in the Western District of Pennsylvania. Consequently, this Court does not accord the plaintiffs' claims of inconvenience much weight, especially because, as explained above, at the time when he agreed to the forum selection clause, Kotan could well have foreseen these alleged inconveniences. There are two other defendants this Court considers in its analysis of convenience to the parties – Fox, a Virginia resident, and Yigit, a Florida resident. (Compl. 1.) In their Reply, the franchisors assert that Fox and Yigit have consented to venue transfer to the Western District of Pennsylvania.[2] (Reply 2.) This negates any claims that venue transfer would inconvenience Fox and Yigit and also resolves the question of the personal jurisdiction of the U.S. District Court for the Western District of Pennsylvania over them.

---

[2] Regarding the other two defendants, Fox and Yigit, the franchisors state:

> Fox and Yigit, through their counsel, Phillip Chung, Esq., have communicated by telephone with Defendants' [Pizza Outlet's and Vocelli's] counsel and have consented to venue transfer to the Western District of Pennsylvania. Fox and Yigit are franchisees in the Vocelli system and have signed franchise agreements containing the same forum selection clause as Plaintiffs' contract with Defendants. Fox and Yigit are willing to honor their contractual obligations.

(Reply 3.)

Plaintiffs' claim that their witnesses and documents are in or near the District of Columbia (Mem. P. & A. Supp. Pls.' Opp'n 4) is counterbalanced by the franchisors' claim that all of their witnesses reside in and all their corporate records are located in the Western District of Pennsylvania (Mot. Dismiss 9). Plaintiffs allege that "the inability to persuade witnesses" to travel to the Western District of Pennsylvania "will have a negative impact and delay the case." (Mem. P. & A. Supp. Pls.' Opp'n 5.) However, without knowing who these witnesses are, it is not clear whether this Court would have any more power than the transferee court to compel them to appear. Neither party has provided a list of expected witnesses or specified their number, who they are, where they live, or what the additional expense would be to the parties or the witnesses to appear in an alternate forum. The parties have only presented conclusory statements about their witnesses' convenience. This Court does not attach much weight to these unsupported claims.

*5. Other Considerations*

The overall balance of fairness and convenience favors the transfer of the case to the Western District of Pennsylvania. No other considerations in this case convince this Court that transfer is inappropriate. None of the parties are residents of the District of Columbia. The parties have not made any claims about the effect of public interest considerations on this Court's evaluation of the franchisors' motion. There are no allegations that the parties will suffer any delay as a result of docket congestion if this case is transferred. As the plaintiffs are not residents of this District, this Court affords the plaintiffs' choice of forum a low level of deference. While this Court recognizes that the plaintiffs will suffer some expense and inconvenience by having to litigate this case in a different venue, for reasons explained above, plaintiffs should have foreseen these obstacles when signing the agreement which included the

forum selection clause. Furthermore, none of these obstacles will prevent the plaintiffs from having their day in court.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that the purposes of 28 U.S.C. § 1404(a) will be best served by transferring this case to the Western District of Pennsylvania. Accordingly, and for the reasons stated herein, Pizza Outlet and Vocelli's motion to dismiss is hereby denied and their motion to transfer the case to the Western District of Pennsylvania is hereby granted.

A separate Order accompanies this Memorandum Opinion.

Signed by Royce C. Lamberth, United States District Judge, October 28, 2005.